47 CCPA

**In re Application of Ted R. TROUTMAN.**

**Patent Appeal No. 6567.**

United States Court of Customs and Patent Appeals.

May 24, 1960.

James F. Weiler, Houston, Tex., for appellant.

Clarence W. Moore, Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals of the United States Patent Office affirming the Primary Examiner's rejection of claims 1, 2, 4, 5, 6, 8, 13, and 14 of appellant's application for a patent on a cutting torch. Claims 1, 4, and 13 are typical of the appealed claims and read:

"1. A cutting torch comprising a torch base, said base having conduits therein for conducting combustible gas, preheating oxygen, and cutting oxygen, a seat on the end of said base, said seat including an annular groove communicating with the conduits conducting said combustible gas and said preheating oxygen, a tip stem adapted to be mounted on said seat, the end of said tip stem cooperating with said groove to provide and [sic] annular primary mixing chamber, means operative to retain said tip stem on said seat, said stem having a longitudinal passage communicating with said conduit conducting cutting oxygen, a plurality of passages directly communicating with said primary mix-

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

ing chamber, a tubular extension on said stem including said cutting oxygen passage, and a nozzle secured on said stem, said nozzle defining an annular orifice about said tubular extension, said nozzle cooperating with the end of said stem to define a secondary mixing chamber communicating with said annular orifice said nozzle terminating at the free extremity of said cutting oxygen passages, said plurality of passages communicating with said secondary mixing chamber.

"4. A cutting torch comprising a base, a recessed seat in said base, a stem secured on said seat, said seat having an annular groove therein, said stem sealing the edges of said groove to define an annular chamber, said base having a fuel conduit and an oxygen conduit communicating with said chamber, said base having a wide-mouth cutting oxygen conduit, said stem having a cutting oxygen passage communicating with the wide-mouth of the cutting oxygen conduit, a tubular extension on said stem enclosing said cutting oxygen passage, a nozzle secured on said stem, said nozzle having a conical bore therein, said bore being closed by the end of said stem to define a second annular chamber, said stem having a passage directly communicating said annular chambers, said nozzle being spaced form [sic] said tubular extension to provide an annular orifice and terminating at the free extremity of the passage in said stem, the portion of the stem secured on said seat being substantially spherical to permit pivoting of the stem.

"13. A cutting tip for use with a torch base having conduits therein for conducting combustible gas, preheating oxygen, and cutting oxygen, a seat on one end of said torch base, said seat including an annular groove communicating with the conduits containing said combustible gas and said preheating oxygen; said cutting tip comprising a tip stem adapted to be mounted on said seat, the end of said tip steam cooperating with said groove to provide an annular primary mixing chamber, means operative to retain said tip stem on the seat, said stem having a longitudinal

passage communicating with said conduit conducting cutting oxygen and having a plurality of passages directly communicating with said primary mixing chamber, a tubular extension on said stem including said cutting oxygen passage, a nozzle secured on said stem, said nozzle defining an annular orifice about said tubular extension and cooperating with the end of said stem to define a secondary mixing chamber communicating with said annular orifice, said plurality of passages communicating with said secondary mixing chamber.

"The references relied on are

| | | |
|---|---|---|
| Drager | 1,460,662 | July 3, 1923 |
| Jones | 2,192,661 | March 5, 1940 |
| Hill | 2,417,491 | March 18, 1947 |
| Smith | 2,531,006 | November 21, 1950." |

Appellant's application relates to a cutting torch of the kind in which a stream of cutting oxygen is projected from a nozzle, surrounded by an annular stream of a mixture of oxygen and a gaseous fuel such as acetylene or hydrogen. The torch, as shown, comprises a cylindrical base having an axial oxygen passage and a passage on each side of the axis parallel thereto. The end of the base is hollowed out in the form of a cylindrical chamber in which the passages terminate, the mouth of the axial passage being flared toward the chamber. The tip stem of the torch is in the form of a cylindrical member having a spherical enlargement at one end which engages the flared mouth of the axial passage in the cylindrical chamber in the base, and also engages the outer edge of the wall of the chamber, thus forming an annular space with which the outer passages in the base communicate. Oxygen is supplied through one of those passages and fuel through the other, and the two receive a preliminary mixing in the annular space. An axial passage extends through the tip stem and communicates with the flared mouth of the axial oxygen passage in the base, while longitudinal passages in the stem parallel to its axis conduct the oxygen and fuel from the mixing space to the outer end of the stem.

The outer end of the stem is cut away to provide an axial extension of small diameter through which the oxygen passage extends, with an annular shoulder around the extension, in which the passages for the fuel and oxygen mixture terminate. The wall of the outer end of the stem is externally threaded to engage an internally threaded nozzle member having an axial opening which surrounds the extension on the stem to form a narrow annular passage through which the oxygen and fuel mixture passes out, the nozzle and extension terminating in the same plane. The inside of the nozzle tip is tapered and forms an annular space around the base of the extension, into which space the oxygen and fuel passages open, thus forming a further mixing chamber adjacent the nozzle outlet.

With this arrangement the cutting oxygen passes axially through the base and stem of the torch while the preheating oxygen and fuel are preliminarily mixed in the chamber in the base and, after passing through the stem, are further mixed adjacent the nozzle. The engagement of the spherical enlargement on the stem with the annular wall of the cylindrical chamber in the base permits a limited angular movement of the stem without interrupting the flow of oxygen or fuel to the nozzle.

The patent to Jones, the basic reference, shows a cutting torch having a stem portion formed of two coaxially arranged tubular members spaced to provide an annular passage between them. The inner member is restricted at the nozzle end to form an annular chamber having an opening which surrounds the outlet of the inner member, and the mouth of this opening and of the inner member terminate in the same plane. At the rear end of the stem the inner member projects beyond the outer and enters a cylindrical chamber in the base member of the torch where it communicates with an axial oxygen passage therein. The outer member of the stem adjoins the outer wall of the cylindrical chamber, and the interior of that chamber communicates through several openings with the space between the tubular members of the stem. A mixture of oxygen and fuel is supplied to this chamber through a passage in the base member, which mixture leaves the chamber through the last-mentioned openings, passes between the members of the stem, enters the annular chamber adjacent the nozzle and finally escapes through the annular passage surrounding the stream of cutting oxygen.

The principal differences between Jones and appellant are that Jones does not supply his oxygen and fuel separately to the chamber in the base as appellant does, but supplies a mixture thereto; that Jones does not have a separate nozzle member as appellant does; and that Jones does not provide appellant's spherical engaging member for permitting angular movement of the stem with respect to the base.

The Smith patent was cited to show it to be old to supply oxygen and fuel separately to a chamber in the torch base, where the initial mixing takes place, instead of supplying a mixture to such a chamber as is done by Jones.

Drager was cited to show the use of a separate nozzle member on a cutting torch of the general type involved here, while Hill was relied on to show use of a spherical fluid coupling to permit angular movement of the coupled parts without interrupting the flow of fluid.

Claims 1, 2, 5, 8, 13, and 14 were rejected on Jones in view of Smith and Drager, while claims 4 and 6 were rejected on the same references in combination with Hill. Claims 13 and 14 were further rejected as indefinite.

Appealed claims 1, 2, 5, 8, 13, and 14 distinguish from the Jones patent by reciting, in slightly different ways, that the preheating oxygen and fuel are supplied to the mixing chamber in the base by separate conduits, and that the tip of the torch is formed by a nozzle which is distinct from the stem.

While Jones unites his preheating oxygen and fuel before supplying them to the torch base, it is evident that they

would be mixed in the annular chamber there in substantially the same manner as in appellant's device. We agree with the board that it has not been shown to be material whether the mixing which takes place in the base is an initial mixing or a further mixing of gases which have already been brought together. Even in the absence of Smith which, as noted, shows it to be old to supply oxygen and fuel separately to a mixing chamber in the torch base, it would be obvious to supply them in that manner in the Jones torch. The fact that Jones does not expressly refer to the annular chamber in the base of his torch as a mixing chamber is immaterial, since mixing will obviously take place in it.

Whether the tip of the torch is an integral part of the stem or a separate nozzle member threaded onto the stem is nothing more than a matter of choice or design. It is old, as shown by Drager, to employ a separate nozzle member and it would be obvious that such a member could be used in the Jones structure if desired.

Appellant has presented a number of affidavits allegedly showing extensive sales and substantial commercial success of his torch. The torch to which the affidavits relate is identified only as being "described and claimed" in appellant's application and its actual structure is not explained. Aside from the fact that the quoted statement is merely a conclusion, the application discloses several modifications and contains claims of varying scope. Accordingly, we agree with the board that the affidavits do not show that the alleged commercial success was due to any particular feature set forth in the appealed claims. Moreover, evidence of commercial success is not sufficient to justify the allowance of claims unless their patentability is otherwise doubtful. We find no such doubt in the case of claims 1, 2, 5, 8, 13, and 14.

We have carefully considered appellant's arguments but are of the opinion that the differences over the Jones device which are set forth in claims 1, 2, 5, 8, 13, and 14 involve nothing more than obvious variations in design, and that the rejection of those claims was therefore proper. It is accordingly unnecessary to consider the further rejection of claims 13 and 14 on the ground of indefiniteness.

Claims 4 and 6 add to the structure recited in the other rejected claims the limitations that the axial oxygen passage in the base has a wide mouth, and that the enlarged head on the stem is spherical to permit pivoting. The Hill patent, which was relied on as showing those features, does not relate to a torch but to a fluid joint of general application. Moreover, in Hill the spherical coupling member fits closely in a correspondingly shaped socket so that there is no annular chamber such as shown by appellant and recited in claims 4 and 6. The structure set forth in those claims provides a simple and compact arrangement of a mixing chamber and angularly adjustable torch stem which is not suggested by the references, singly or collectively and, in our opinion, involves more than an obvious combination of features shown by them.

It may be conceded that the broad idea of mounting the Jones torch for universal movement would be obvious, but we very seriously doubt that appellant's specific mounting means would be so. It seems to us that the obvious way to apply Hill's joint to the Jones structure would be to insert it in the supply pipes at the base of the nozzle rather than to redesign the mixing chamber in such a way as to incorporate a universal joint as a part thereof. In our opinion, the latter arrangement would require the exercise of hindsight in light of appellant's disclosure. We think claims 4 and 6 should have been allowed.

The decision of the Board of Appeals is modified, being affirmed as to claims 1, 2, 5, 8, 13, and 14, and reversed as to claims 4 and 6.

Modified.